**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **GINGER OIL COMPANY** | § | **CASE NO. 16-30678-H1-11** |
| **Debtor** | § | **(Chapter 11)** |
| | § | **JUDGE ISGUR** |

# Debtor's Plan of Reorganization

Ginger Oil Company, Debtor-in-Possession herein, proposes the following Plan of Reorganization (the "Plan") pursuant to Section 1121(a) of the Bankruptcy Code.

## ARTICLE 1.

### DEFINITIONS

<u>Defined Terms</u>.  In addition to such other terms as are defined in other sections of this Plan, the following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural, masculine and feminine forms of the terms defined).

1.1.    "<u>Administrative Expense</u>" means any Claim arising after the Petition Date and prior to the Effective Date, constituting a cost or expense of administration of the Chapter 11 Case allowed under subsections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed pursuant to sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estate of the Debtor pursuant to section 1930, chapter 123 of title 28 of the United States Code.

1.2.    "<u>Administrative Expense Creditor</u>" means any Person, including a Professional, entitled to payment on account of an Administrative Expense.

1.3.    "<u>Allowed</u>", when used with respect to a Claim or Equity Interest, means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) to which no objection was filed by the Objection Deadline, unless such Claim is the subject of a pending action in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court; or (ii) to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order, or (iii) a contested claim, proof of which was not timely filed with the Bankruptcy Court, but fixed in an amount

under the Plan at the confirmation hearing.  "Allowed," when used with respect to any Equity Interest, shall mean an Equity Interest, proof of which was timely and properly filed or, if no proof of interest was filed, which has been or hereafter is listed by the Debtor on its Schedules as liquidated in amount and not disputed or contingent, and, in either case, as to which no objection to the allowance thereof has been interposed on or before the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Court, or the Plan, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the holder thereof.  "Allowed", when used with respect to a Fee Claim, shall mean a Fee Claim as to which a Final Order approving such Fee Claim has been entered.

1.4.    "Assets" means all of the right, title, and interest in and to property of whatsoever type or nature owned by the Debtor as of the Petition Date, together with assets subsequently acquired by the Debtor, and including, but not limited to, property defined in section 541 of the Bankruptcy Code (each identified item of property being herein sometimes referred to as an Asset).  Assets include the Avoidance Actions and the Litigation Claims.

1.5.    "Avoidance Action" means a cause of action assertable by the Debtor or its successors that arises under the Bankruptcy Code or that is made available to the Debtor or to the Chapter 11 Trustee under the Bankruptcy Code, including causes of actions brought pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

1.6.    "Ballot" means the form of ballot provided to holders of Claims or Equity Interests pursuant to Bankruptcy Rule 3017(d), by which each holder may accept or reject the Plan.

1.7.    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended and as codified at title 11 of the United States Code, as applicable to this Chapter 11 Case.

1.8.    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, Houson Division, or such other court having jurisdiction over all or any part of this Chapter 11 Case.

1.9.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to this Chapter 11 Case, including applicable local rules of the Bankruptcy Court.

1.10.    "Business Day" means any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in New York, New York are authorized or obligated by law or executive order to close.

1.11.    "Cash" means legal tender of the United States of America.

1.12.    "Chapter 11 Case" means the above captioned reorganization case of the Debtor under Chapter 11 of the Bankruptcy Code.

1.13.   "Claim" means (a) a right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, legal, equitable, secured or unsecured or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured (including potential and unmatured tort and contract claims), disputed, undisputed, secured or unsecured.

1.14.   "Claimant" means the holder of a Claim.

1.15.   "Class" means a category or group of holders of Claims or Equity Interests as designated in Article 2.0 of the Plan.

1.16.   "Collateral" means any Asset subject to a valid and enforceable Lien to secure payment of a Claim.

1.17.   "Confirmation Date" means the date of entry of the Confirmation Order.

1.18.   "Confirmation Hearing" means the hearing conducted by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider confirmation of the Plan, as the same may be continued from time to time.

1.19.   "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

1.20.   "Contested", when used with respect to a Claim, means a Claim (a) that is listed in the Debtor's Schedules as disputed, contingent, or unliquidated; (b) that is listed in the Debtor's Schedules as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; (c) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (d) as to which an objection has been or may be timely filed and has not been denied by Final Order.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

1.21.   "Creditor" means a "creditor" as defined in section 101(10) of the Bankruptcy Code.

1.22.   "Creditor Trust" means a trust set up for the creditors under this Plan.

1.23.   "Debtor" shall mean Ginger Oil Company.

1.24.   "Deficiency Claim" means the unsecured portion of a claim of a secured creditor Allowed by an order of the Bankruptcy Court or by agreement by and between the Debtor and

the holder of the Allowed Secured Claim determined pursuant to Bankruptcy Code section 506(a).

1.25.    "Disallowed", when used with respect to all or any part of a Claim or Equity Interest, means that portion of a Claim or Equity Interest to which an objection to allowance or a motion to disallow has been sustained by a Final Order.

1.26.    "Disbursing Agent" shall mean William D. Neville, President.

1.27.    "Disclosure Statement" means the written statement, as amended, supplemented, or modified from time to time, describing the Plan that is approved and distributed in accordance with sections 1125, 1126(b) and 1145 of the Bankruptcy Code and Bankruptcy Rule 3018.

1.28.    "Effective Date" means, and shall occur on, the thirtieth day after the Confirmation Date on which all conditions to the effectiveness of the Plan have been satisfied or waived.

1.29.    "Equity Interest" means a shareholder's interest in the Debtor.

1.30.    "Equity Interest Holder" means any owner of an Equity Interest.

1.31.    "Equity Group" means Ginger Oil Company, AB.

1.32.    "Fee Application" means an application for allowance of a Fee Claim.

1.33.    "Fee Claim" means a Claim by a Professional or any other party in interest under sections 328, 330 or 503 of the Bankruptcy Code for compensation or reimbursement in the Chapter 11 Case.

1.34.    "Final Order" means an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which order or judgment the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.35.    "General Unsecured Claim" means any Claim other than an Administrative Expense, a Secured Claim, a Priority Claim, a Subordinated Claim, Equity Interest, or an Insider Claim.

1.36.    "Insider Claim" means any Claim held by an insider of the Debtor as the term "insider" is defined in Bankruptcy Code section 101(31).

1.37.    "Lien" means any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any assets of the Debtor contemplated by Section 101(37) of the Bankruptcy Code.

1.38.    "<u>Litigation Claim</u>" means a cause of action or claim that is property of the estate under section 541 of the Bankruptcy Code, including Avoidance Actions, but excluding any actions or claims released under the Plan or the Confirmation Order.

1.39.    "<u>Objection</u>" means an objection to the allowance of a Claim or Equity Interest filed by any party entitled to do so by the deadline fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court.

1.40.    "<u>Objection Deadline</u>" means the date by which Objections to Claims must be filed, to be fixed in the manner prescribed pursuant to section 9.1 of the Plan.

1.41.    "<u>Person</u>" means any individual, corporation, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.42.    "<u>Plan</u>" means this Plan of Reorganization proposed by the Debtor, as it may be altered, amended, or modified from time to time.

1.43.    "<u>Plan Documents</u>" means any exhibits to the Plan that will be filed in the Bankruptcy Court prior to the date fixed by order of the Bankruptcy Court for the commencement of the Confirmation Hearing.

1.44.    "<u>Priority Claim</u>" means a Claim other than a Claim for an Administrative Expense to the extent that it is entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.45.    "<u>Priority Non-Tax Claim</u>" means a Priority Claim other than a Priority Tax Claim.

1.46.    "<u>Priority Tax Claim</u>" means a Claim of a governmental unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

1.47.    "<u>Professionals</u>" means those Persons (a) retained by the Debtor pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code or (b) who seek compensation or reimbursement pursuant to sections 503(b)(3), 503(b)(4), 503(b)(5), or 506(b) of the Bankruptcy Code.

1.48.    "<u>Properties</u>" means all of the oil, gas and/or mineral interests owned by the Debtor.

1.49.    "<u>Proponent</u>" means the Debtor, as proponent of the Plan.

1.50.    "<u>Pro Rata Share</u>" means, with respect to a specific Allowed Claim, the proportion that the amount of such Claim bears to the aggregate amount of all Claims in the Class to which such Claim belongs, including Contested Claims, but not including Disallowed Claims.

1.51.    "Rejection Claim" means any Claim arising under a lease or executory contract that the Debtor has rejected or will reject pursuant to section 365 of the Bankruptcy Code, or the confirmation of this plan, including but not limited to any Claim arising under section 502(g) of the Bankruptcy Code as a consequence of such rejection, reduced by the limitations on such Claim provided by section 502(b)(6) of the Bankruptcy Code and any limitations on such Claim provided by applicable non-bankruptcy law.

1.52.    "Reorganized Debtor" means the entity to whom the Assets shall re-vest on the Effective Date of the Plan.

1.53.    "Schedules" means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules or statements may be amended.

1.54.    "Secured Claim" means (a) a Claim secured by a lien on an Asset, which lien is valid, perfected and enforceable pursuant to applicable law and is not subject to avoidance pursuant to the Bankruptcy Code or other applicable non-bankruptcy law, but only to the extent of the value of such Asset; and (b) a Secured Tax Claim.

1.55.    "Secured Creditor" means the holder of a Secured Claim.

1.56.    "Secured Tax Claim" means any Claim for prepetition ad valorem taxes.

1.57.    "Subordinated Claim" means any Claim that is subordinated by Final Order of the Bankruptcy Court pursuant to Section 510 of the Bankruptcy Code.

## MISCELLANEOUS INTERPRETIVE PROVISIONS

1.58.    Exhibits.   All exhibits to the Plan and/or Disclosure Statement are incorporated into and are a part of the Plan as if set forth in full herein.

1.59.    Interpretation. Unless otherwise specified, all section, article and exhibit references in this Plan are to the respective section in, article of, or exhibit to, the Plan as the same may be amended, waived, or modified from time to time.  The headings in the Plan are for convenience and reference only and shall not limit or otherwise affect the provisions hereof.

1.60.    Plan Controls.  In the event of an inconsistency between the Plan and the Plan Documents, the Plan shall control, except in the event of an inconsistency between the Plan and the Documents and the Mediated Settlement Agreement.  In such a case, the terms set out in the Mediated Settlement Agreement and the amendments thereto shall control.

1.61.    Other Terms.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  A term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

## ARTICLE 2.0

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

2.1.    The following is a designation of the Classes of Claims and Equity Interests treated pursuant to this Plan.  Administrative Expense Claims, Priority Non-Tax Claims and Priority Tax Claims are included as Classes only for convenience notwithstanding section 1123(a)(1) of the Bankruptcy Code.  A Claim or Equity Interest is included in a particular Class only to the extent that (i) the Claim or Equity Interest meets the description of that Class, and (ii) the Claim or Equity Interest is an Allowed Claim or Equity Interest.

2.2.    <u>Claims and Equity Investments.</u>

### Class A – Unclassified Claims

A-1    Administrative Expense Claims
A-2    U.S. Trustee's Fees
A-3    Priority Claims

### Class B – Secured Claims

B-1    Independent Bank of Texas (the "Bank" or "IBTX")
B-2    Secured Tax Claims

### Class C- Unsecured Claims

C-1    Allowed General Unsecured Claims
C-2    Allowed Unsecured Insider Claims

### Class D – Equity Interests in the Debtor

D-1    Equity Interest -  Ginger Oil Company AB.

## ARTICLE 3.0

## IDENTIFICATION OF IMPAIRED CLASSES
## OF CLAIMS AND EQUITY INTERESTS

3.1.    <u>Unimpaired Classes of Claims and Equity Interests</u>.  Except for Creditors holding claims in Class A, no Class of Claims or Equity Interests is unimpaired under the Plan.

3.2.    <u>Impairment Controversies</u>.  If a controversy arises as to whether any Class of Claims or Equity Interests is impaired under the Plan, the Bankruptcy Court shall determine such

controversy after notice and a hearing.

## ARTICLE 4.0

## TREATMENT OF ADMINISTRATIVE EXPENSES,
## U.S. TRUSTEE AND PRIORITY CLAIMS

4.1.    <u>Administrative Expenses</u>.   All Administrative Expenses shall be treated as follows:

(a)    <u>Administrative Expenses Bar Date</u>.   The holder of any Administrative Expense other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Expense, must file with the Bankruptcy Court and serve on the U. S. Trustee, the Reorganized Debtor and its counsel, notice of such Administrative Expense within 30 days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  **FAILURE TO FILE THIS NOTICE TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE BEING FOREVER BARRED AND DISCHARGED.**

(b)    <u>Filing Fee Claims</u>.   Each Person asserting a Fee Claim for services rendered or expenses incurred before the Effective Date shall file with the Bankruptcy Court, and serve on the U. S. Trustee, the Reorganized Debtor and its counsel, a Fee Application within 60 days after the Effective Date.  **FAILURE TO FILE A FEE APPLICATION TIMELY SHALL RESULT IN THE FEE CLAIM BEING FOREVER BARRED AND DISCHARGED**.

(c)    <u>Allowance of Administrative Expenses</u>.  An Administrative Expense with respect to which notice has been properly filed and served pursuant to section 4.1(a) of the Plan shall become an Allowed Administrative Expense if no objection is filed within 30 days after the filing and service of notice of such Administrative Expense.  If an objection is timely filed, the Administrative Expense shall become an Allowed Administrative Expense only to the extent Allowed by Final Order.  An Administrative Expense that is a Fee Claim, and with respect to which a Fee Application has been timely filed pursuant to section 4.1(b) of the Plan, shall become an Allowed Administrative Expense only to the extent Allowed by Final Order

(d)    <u>Payment of Allowed Administrative Expenses</u>.   Each holder of an Allowed Administrative Expense Claim shall receive from the Reorganized Debtor, at the option of the Reorganized Debtor: (i) the amount of such holder's Allowed Claim in one Cash payment on the later of the Effective Date or the next Business Day after such Claim becomes an Allowed Claim; (ii) the amount of such holder's Allowed Claim in accordance with the ordinary business terms of such expense or cost; or (iii) such other treatment to which the holder of such Administrative Expense and the Reorganized

Debtor may agree in writing.

4.2. <u>U.S. Trustee Fees</u>.   The Reorganized Debtor shall be responsible for timely payment of the United States Trustee quarterly fees incurred pursuant to 28 U.S.C. §1930(a)(6). Any fees due as of the date of confirmationof the plan will be paid in full on the effective date of the plan.   After confirmation, the Reorganized Debtor shall pay United States Trustee quarterly fees as they accrue until this case is closed by the Court.   The Reorganized Debtor shall file with the Court and sere on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee.

4.3. <u>Priority Non-Tax Claims</u>.  Each holder of an Allowed Priority Non-Tax Claim shall receive from the Reorganized Debtor, at the option of the Reorganized Debtor: (i) the amount of such holder's Allowed Claim in one Cash payment on the later of the Effective Date or the next business day after such Claim becomes an Allowed Claim; (ii) such other treatment to which the holder of such Allowed Priority Non-Tax Claim and the Reorganized Debtor may agree in writing; or (iii) the amount of such holder's Allowed Claim in accordance with Bankruptcy Code section 1129(a)(9)(B).

The Debtor estimates that there will be $24,950.00 in priority wage claims on the Effective Date.   Mr. Neville and Mr. Blixt are converting their priority wage claims to equity in the Reorganized Debtor on the effective date.

4.4. <u>Priority Tax Claims</u>.  Each holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtor, at the option of the Reorganized Debtor: (i) the amount of such holder's Allowed Claim in one Cash payment on the later of the Effective Date or the next business day after such Claim becomes an Allowed Claim; (ii) such other treatment to which the holder of such Allowed Priority Tax Claim and the Reorganized Debtor may agree in writing; or (iii) the amount of such holder's Allowed Claim in accordance with Bankruptcy Code section 1129(a)(9)(C).  The Debtor's claims register shows that Allowed Priority Tax Claims will total $358.41.   The allowed secured tax claims shall be paid in full on the 15th day of the first full month of the first full quarter following the effective date of the Plan, with interest at the rate of 12%.

## ARTICLE 5.0

## TREATMENT OF SECURED CLAIMS, GENERAL UNSECURED CLAIMS AND EQUITY INTERESTS IN THE DEBTOR

5.1. Class B – Secured Claims against the Debtor

### 5.1.1   Class B-1 Secured Claim of Independent Bank

1. The Bank Claims, including, without limitation, the amount of any adequate protection super priority administrative claims granted to the Bank under the cash collateral orders (collectively, the "**Cash Collateral Order**") and DIP Financing Order (as defined below) (collectively, the "**IBTX Super Priority Claims**"), will be treated as follows:

   a. *The Bank's Cash Payment*. On the Effective Date, the Reorganized Debtor will pay to the Bank an amount, in cash, equal to the following (the "**Bank Cash Payment**"): (i) all accrued, unpaid interest as of the Effective Date, *plus* (ii) all incurred, unpaid costs, charges and fees, including, without limitation, attorneys' fees, as of Effective Date.

   b. *Restructured Senior Loan*. On the Effective Date, the Reorganized Debtor will execute such Restructuring Documents in form and substance acceptable to the Bank, in its sole discretion (collectively, the "**Restructured Senior Loan Documents**"), to evidence the Restructured Senior Loan. The Restructured Senior Loan Documents will, among other things, provide for the following:

      ➢ Term Loan. Term loan in the original principal amount of $2,800,000.

      ➢ Interest Rate: WSJ Rate (as defined in existing Credit Agreement) *plus* 1.5% per annum; *provided, however*, that if, following a Borrowing Base Determination (as defined below)), it is determined that the Restructured Senior Loan is in Borrowing Base Conformity (as defined below) and no defaults exist under the Restructured Senior Loan Documents, then the Base Rate will adjust, effective as of the first day of  the month following the determination of Borrowing Base Conformity, to the WSJ Rate *plus* 0.5% per annum.

      ➢ Default Rate: equal to WSJ Rate *plus* 4.0% per annum.  Accrued interest paid monthly.

      ➢ Principal Payments: Principal payments, due and payable monthly on the first business day of each month, as follows: (i) $25,000 per month commencing on the first business day of the month following the Effective Date.

      ➢ Additional Mandatory Principal Payments: Following each Borrowing Base Determination (as defined below) (excluding the Initial Borrowing Base Determination (as defined below)), in the event there exists a Borrowing Base Deficiency (as defined below), Reorganized Debtor shall be required to pay down the outstanding principal balance of the Restructured Senior Loan by an amount equal to the Borrowing Base Deficiency by no later than the earlier of (i) sixty (60) days after IBTX provides notice to the Reorganized Debtor of the Borrowing Base Deficiency or (ii) ninety (90) days after the effective date of the Borrowing Base Determination.

      ➢ Borrowing Base Determinations:

         A. Definition. For all purposes herein: (i) a "**Borrowing Base Determination**" means a determination of the Borrowing Base made by IBTX in accordance with the standards set forth in § 2.8.1 of the existing Credit Agreement;

*provided*, for the avoidance of doubt, that the Borrowing Base Determinations will be used for purposes other than determining any loan availability and IBTX shall have no obligation to fund, and the Reorganized Debtor shall have no right to obtain, any advances or re-advances under the Restructured Senior Loan; (ii) a "**Borrowing Base Deficiency**" means the amount by which the outstanding principal balance of the Restructured Senior Loan as of the effective date of a Borrowing Base Determination exceeds the Borrowing Base determined under such Borrowing Base Determination; and (iii) "**Borrowing Base Conformity**" means if following a Borrowing Base Determination, the Borrowing Base determined under such Borrower Base Determination is equal to or greater than the outstanding principal balance of the Restructured Senior Loan as of the effective date of such Borrowing Base Determination.

B. Initial Borrowing Base Determination.   Within thirty (30) days of the Effective Date, IBTX will make an initial Borrowing Base Determination, effective as of the last day of the month in which the Effective Date occurs (the "**Initial Borrowing Base Determination**"), and provide the results of same to the Reorganized Debtor.

➢ Semi-Annual Borrowing Base Determinations.   Until the Restructured Senior Loan has been indefeasibly repaid in full, IBTX shall, on a semi-annual basis, make another Borrowing Base Determination, and provide the results of same to the Reorganized Debtor, along with a statement indicating whether the Restructured Senior Loan is in Borrowing Base Conformity and, if not, the amount of the Borrowing Base Deficiency.

➢ Maturity Date: 2 years after the Effective Date.   On the Maturity Date, all outstanding and unpaid principal, accrued interest, and other fees, charges and expenses shall be immediately due and payable.

➢ Security: Restructured Senior Loan to be secured by all existing and after acquired property of the Reorganized Debtor, of any nature whatsoever.  Without in any way limiting the foregoing, IBTX will retain all existing liens and security interests.

➢ Other Terms:   Restructured Senior Loan Documents will also provide for the following:

a. Accounts.  Reorganized Debtor required to (i) open one or more deposit accounts at the Bank on or prior to the Effective Date, (ii) transfer all existing funds of the Debtor and the Debtor's bankruptcy estate to such Bank account(s) on the Effective Date, excluding only the amounts on deposit in the DIP Operator Account, and (iii) with the exception of the DIP Operator Account, close all non-Bank accounts on the Effective Date.

b. Semi-Annual Reserve Reports.  Until the Restructured Senior Loan has been indefeasibly repaid in full, Reorganized Debtor shall be required to commission, at Reorganized Debtor's expense, and to deliver to IBTX by no later than March 1 and September 1 of each such year, an Independent

Reserve Report (as defined in the existing Credit Agreement), dated effective April 1 and October 1, respectively, of each such year.  In conjunction with each such Independent Reserve Report, Reorganized Debtor shall also be required to provide to IBTX the documentation, data and certifications described in §§ 7.2.2(i), 7.2.2(iii), and 7.2.2(v) of the existing Credit Agreement.

c. Financial Reporting.  Reorganized Debtor required to provide monthly financial reporting to IBTX in the form of profit and loss statements and balance sheets.   These documents will be due on the 20th day of the month following the reporting period.

d. Other Terms.  Such other customary terms and conditions as are standard to exit financing, set forth within IBTX's existing loan documentation, and/or otherwise mutually acceptable to the Supporting Parties.

**Class B-1** is impaired under the Plan.

5.2     Class B-2 Allowed Secured Tax Claims

(a) **Determination of Allowed Secured Tax Claims**. On or before the Confirmation Date, the Proponents of the Plan shall obtain either by agreement or by a Final Order the amount of the Allowed Secured Tax Claim.

(b) **Treatment of Allowed Secured Tax Claims.**   The allowed secured tax claims shall be paid in full on the 15th day of the first full month of the first full quarter following the effective date of the Plan, with interest at the rate of 12%.

**Class B-2** is impaired under the Plan.

5.3     Class C – Unsecured Claims against the Debtor

5.3.1   Class C-1 – Allowed General Unsecured Claims.

(a) **Determination of Allowed General Unsecured Claims.** Class C-1 includes any Claim other than an Administrative Expense, a Secured Claim, a Priority Claim, a Subordinated Claim, and an Insider Claim. The Proponents of the Plan shall either by agreement or by a Final Order fix the amount of the Allowed General Unsecured Claims prior to the Confirmation Date.   Any claims, other than Insider Claims, listed on the Debtor's Schedule F which are not listed as disputed, contingent or unliquidated shall be deemed Allowed General Unsecured Claims by agreement.

(b) **Treatment of Allowed General Unsecured Claims**. The Reorganized Debtor shall pay the holders of allowed general unsecured claims in full after all Class A-1 claims are paid in full.  It is anticipated that Class C-1 creditors shall be paid on the 15th day of the sixth month following the effective date of the Plan.

**Class C-1** is impaired under the Plan.

5.3.2   Class C-2 Insider Unsecured Claims.

(a) **Determination of Allowed Insider Unsecured Claims.**   Class C-2 includes all allowed Insider Unsecured Claims as determined under Bankruptcy Code Section 101(31)(B) and excluding any priority claims pursuant to Bankruptcy Code Section 507(a)(4).   The members of this Class are Don Neville, Hans Blixt, Julienne Blixt, Paul Robinson and Richard Brubaker.   On the effective date, Don Neville and Hans Blixt will convert their claims to an equity interest in the Debtor in an amount equal to their Insider Claims.

(b) **Treatment of Allowed Insider Unsecured Claims**.  The Reorganized Debtor shall make pro-rata payments to the remaining holders of allowed insider claims after all Class A, B and C-1 claims are paid in full.  Once the Class A, B and C-1 claims are paid, the Reorganized Debtor shall make quarterly payments beginning on the 15th day of the first full quarter following the last payment to the Class A, B and C-1 claimants.

**Class C-2** is impaired under the Plan.

5.4     Class D Equity Interests in the Debtor.

(a)   Ginger Oil Company AB is the only shareholder of the Debtor, subject to the terms of this Plan of Reorganization.   On the effective date, the DIP Financing and the pre-petition debt to Ginger Oil AB shall convert to an equity interest in the Reorganized Debtor, equal to the amount of the indebtedness.

**Class D** is impaired under the Plan.

**ARTICLE 6.0**

**ACCEPTANCE OR REJECTION OF PLAN**

6.1.    <u>Classes Entitled to Vote</u>.  Each impaired Class of Claims shall be entitled to vote separately to accept or to reject the Plan.  Any unimpaired Class of Claims or Equity Interests shall not be entitled to vote to accept or to reject the Plan.

6.2.    <u>Class Acceptance Requirement</u>.  A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (½) in number of the Allowed Claims in such Class that have voted on the Plan.

6.3.    <u>Cramdown</u>.  This section shall constitute the Proponents' request, pursuant to section 1129(b)(1), that the Bankruptcy Court confirm the Plan notwithstanding the fact that the requirements of section 1129(a) may not be met.

6.4.    <u>Cure Payments and Release of Liability</u>.  All cure payments which may be required by Bankruptcy Code section 365(b)(1) under any executory contract or unexpired lease that is assumed, or assumed and assigned, under this Plan shall be made by the Reorganized Debtor; *provided, however*, in the event of a dispute regarding the amount of any cure payments, the cure of any other defaults, the ability to provide adequate assurance of future performance, or any other matter pertaining to assumption or assignment, the Reorganized Debtor shall make such cure payments and cure such other defaults and provide adequate assurance of future performance, all as may be required by Bankruptcy Code Section 365(b)(1), following the entry of a Final Order resolving such dispute.  To the extent that a party to an assumed executory contract or unexpired lease has not filed an appropriate pleading with the Bankruptcy Court on or before the thirtieth (30th) day after the Effective Date disputing the amount of any cure payments offered to it by the Reorganized Debtor, disputing the cure of any other defaults, disputing the promptness of the cure payments, or disputing the provisions of adequate assurance of future performance, then such party shall be deemed to have waived its right to dispute such matters.

**ARTICLE 7.0**

**MEANS OF IMPLEMENTATION OF THE PLAN**

7.1.    <u>Assumption of Liabilities</u>.  Except as otherwise provided herein, the Reorganized Debtor shall assume liability for and the obligations to make the distributions required to be made under the Plan, but shall not otherwise assume liabilities of the Debtor.

7.2.    <u>Injunction</u>.  Except as otherwise provided in the Plan, from and after the Confirmation Date, all holders of Claims against and Equity Interests in the Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim or Equity Interest against

the Debtor and its Assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets and the Debtor; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however,* (i) that each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and all holders of Claims and Equity Interests shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan, and (ii) the holder of a Lien on any Collateral which is surrendered pursuant to this Plan or hereafter by the Reorganized Debtor may exercise its legal and contractual rights and remedies, including foreclosure sale, with respect thereto.

7.3.   Payment of Post-Confirmation Quarterly Fees.   The Reorganized Debtor shall timely pay all fees incurred pursuant to 28 U.S.C. §1930(a)(6) until the Clerk of the Court closes the Chapter 11 Case.   The Reorganized Debtor shall file with the Court, and serve on the United States Trustee, a quarterly financial report for each quarter (or portion thereof) that the cases remain open until the Clerk of the Court closes the Chapter 11 Case.

7.4.   Revocation of Plan.   The Proponents reserve the right to revoke and withdraw this Plan before the entry of the Confirmation Order.   If the Proponents revoke or withdraw this Plan, or if confirmation of this Plan does not occur, then this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by the Debtor, or any other Person or to prejudice in any manner the rights of the Debtor or Person in any further proceedings involving the Debtor.

7.5.   Transfer of Assets to the Reorganized Debtor.   On the Effective Date, the Assets, including the Litigation Claims, Avoidance Actions and other Actions will be reserved, preserved, assigned, transferred, and conveyed, as the case may be, to the Reorganized Debtor free and clear of all liens, claims and encumbrances or interests, except to the extent that such Liens and Claims are expressly retained under this Plan.

## ARTICLE 8.0

## PROVISIONS GOVERNING DISTRIBUTION

8.1.   Distributions.   Any payments or distributions to be made by the Reorganized Debtor pursuant to the Plan shall be made to the holders of Allowed Claims.   Any payments or distributions to be made by the Reorganized Debtor pursuant to the Plan shall be made as provided for in the Plan, or as may be ordered by the Bankruptcy Court.   Any payment or distribution by the Reorganized Debtor pursuant to this Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited by the Reorganized Debtor into the United States Mail.

8.2.     Distributions to be Made by the Reorganized Debtor.  Distributions to be made to any holder of an Allowed Claim under the Plan shall be made by the Reorganized Debtor.

8.3.     Means of Cash Payment.  Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

8.4.     Delivery of Distributions.  Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the Proofs of Claim or Proofs of Interest filed by such holders (or at the last known addresses of such holders if no Proof of Claim or Proof of Interest is filed); or if the Debtor have been notified of a change of address, at the address set forth in such notice.  All Unclaimed Property shall revert to the Reorganized Debtor.

8.5.     Time Bar to Cash Payments.  Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check shall be made on or before the later of the first anniversary of the Effective Date or ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property, to be treated in accordance with paragraph 8.4 of this Plan.

8.6.     No Interest Unless Otherwise Provided.  No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

8.7.     No De Minimus Distributions.  No Distribution of less than five dollars ($5) shall be made to any holder of an Allowed Claim.  Such undistributed amount shall be retained by the Reorganized Debtor.  Whenever a payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction down to the nearest whole cent.

## ARTICLE 9.0

### PROCEDURES FOR RESOLVING AND TREATING

### CONTESTED AND CONTINGENT CLAIMS

9.1.     Objection Deadline.  Unless a different date is set by order of the Bankruptcy Court, all objections to Claims shall be served and filed no later than ninety (90) days after the Effective Date or ninety (90) days after a particular Proof of Claim is filed, whichever is later. Any Proof of Claim filed more than thirty (30) days after the Confirmation Date shall be of no force and effect, shall be deemed disallowed, and will not require objection.  All Contested Claims shall be litigated to Final Order; *provided, however,* that the Reorganized Debtor may compromise and settle any Contested Claim in its sole discretion, without approval of the Bankruptcy Court.  Confirmation of the Plan authorizes the Reorganized Debtor to enter into any

compromise or settlement of a Claim or Litigation Claim without further order from the Bankruptcy Court or notice and hearing.

9.2.    Responsibility for Objecting to Claims.  Only the Reorganized Debtor may file objections to claims after the Effective Date of the Plan.

9.3.    No Distribution Pending Allowance.  Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Contested Claim unless and until such Contested Claim becomes an Allowed Claim.

9.4.    Administration of Contested Claims.

(a)    No Distribution Pending Allowance.  Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Contested Claim unless and until such Contested Claim becomes an Allowed Claim.

(b)    Disputed Claims Reserve.  In determining the amount of distributions to be made under the Plan to holders of Allowed Claims, the appropriate distributions required by the Plan shall be made according to estimates and subject to the provisions of the Plan.  To protect the interests of holders of Contested Claims, the Disputed Claims Reserve shall be established on or prior to the Effective Date.  On the Effective Date, the Reorganized Debtor shall fund the Disputed Claims Reserve with Cash in an amount that represents the Pro Rata Share of the Cash that would otherwise be distributed to holders of Contested Claims if such Claims were Allowed.

(c)    Distribution After Allowance.  As soon as practicable after a Contested Claim becomes an Allowed Claim, the holder of an Allowed Claim shall receive a distribution in an amount equal to the aggregate of all the distributions that such holder would have received had such Contested Claim been an Allowed Claim on the Effective Date.  Distributions to each holder of a Contested Claim, to the extent that such Claim becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which such Claim belongs.  The Reorganized Debtor shall have the right to make or direct the making of all interim distributions to the holders of Allowed Claims.  No interest shall be paid on account of a Contested Claim that later becomes an Allowed Claim except as otherwise provided in the Plan.

(d)    Distribution After Disallowance.  If and when a Contested Claim becomes a Disallowed Claim, the Pro Rata Share of the distributions to which each holder is entitled shall increase commensurately.  Accordingly, the Reorganized Debtor, in its sole discretion, shall have the right to make or direct the making of any subsequent distributions.

## ARTICLE 10.0

## EXECUTORY CONTRACTS AND LEASES

General Treatment; Assumed If Not Rejected.  The Plan constitutes and incorporates a

motion by the Debtor to assume and assign all prepetition executory contracts and unexpired leases to which the Debtor is a party, except for executory contracts or unexpired leases that: (a) have been assumed or rejected pursuant to Final Order of the Bankruptcy Court; (b) are the subject of a separate motion pursuant to section 365 of the Bankruptcy Code to be filed and served by the Debtor on or before the Effective Date.

10.1.   <u>Bar to Rejection Damages.</u>   If the rejection of an executory contract or an unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or the Reorganized Debtor or its properties or agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor by the earlier of (a) 30 days after the Confirmation Date or (b) such other deadline as the Court may set for asserting a Claim for such damages.

10.2.   <u>Rejection Claims</u>.   Any Rejection Claim arising from the rejection of an unexpired lease or executory contract not barred by section 10.2 of the Plan shall be treated as a General Unsecured Claim against the Debtor pursuant to Article 5.0 of the Plan; *provided, however*, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements.   Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objections to such Claim if asserted.

## ARTICLE 11.0

## MAINTENANCE OF CAUSES OF ACTION

11.1.   <u>Causes of Action</u>.   Unless expressly waived or released in the Plan or Confirmation Order, the Reorganized Debtor shall retain any cause of action belonging to the Debtor's Estate pursuant to Section 541 of the Bankruptcy Code, including all Litigation Claims, and may litigate rights to payments, or Claims that may belong or have belonged to the Debtor.

## ARTICLE 12.0

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

12.1   <u>Conditions to Confirmation</u>.   The following are conditions precedent to the occurrence of the Confirmation Date, each of which must be satisfied or waived in accordance with Section 12.3 of the Plan:

      (a)     An order finding that the Disclosure Statement contains adequate information pursuant to Section 1125 of the Bankruptcy Code shall have been entered;

      (b)     The proposed Confirmation Order shall be in a form and substance reasonably satisfactory to the Debtor and Ginger Oil Company AB.

12.2     <u>Conditions to Effective Date of Plan</u>.  The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 12.3 of the Plan:

      (a)     The Confirmation Order shall have been entered in a form and substance satisfactory to the Proponents, and shall, among other things, provide that the Debtor and the Reorganized Debtor are authorized and directed to take all actions necessary or appropriate to consummate the Plan, including without limitation, to enter into, implement and perform under the contracts, instruments and other agreements or documents created in connection with the Plan;

      (b)     The Confirmation Order shall not then be stayed, vacated or reversed;

      (c)     All material authorizations, consents and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained; and

      (d)     All material actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

12.3.     <u>Waiver of Conditions</u>.  There shall be no waiver of conditions under the Plan.

## ARTICLE 13.0

## DISCHARGE; INJUNCTION

13.1.     <u>Discharge of Debtor</u>.  To the extent permitted by Section 1141 of the Bankruptcy Code, all consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Equity Interests of any nature whatsoever against the Debtor or any of its assets or properties.  Except as otherwise provided herein, upon the Effective Date, the Debtor and its successors in interest shall be deemed discharged and released pursuant to section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims treated in the Plan, as well as all other Claims and Equity Interests, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; (c) the holder of a

Claim based upon such debt has accepted this Plan; or (d) the Claim has been Allowed, disallowed, or estimated pursuant to section 502(c) of the Bankruptcy Code.  The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor and its successors in interest other than those obligations specifically set forth pursuant to this Plan.

    13.2.    <u>Injunction</u>.    Except as otherwise expressly provided in the Plan, the Confirmation Order shall provide, among other things, that from the Confirmation Date, all Persons who are or may be past, current or future holders of a Claim or Equity Interest against Debtor or its estates:

> (a)    shall receive recovery on account of such Claim, if Allowed, solely from the Reorganized Debtor and on the Effective Date such Claim, if Allowed, shall exist and be valid only to the extent it is solely asserted against the Reorganized Debtor;

> (b)    hereby permanently, irrevocably and unconditionally release and discharge Debtor and each of its officers, directors, agents, employees, representatives, financial advisors, attorneys and accountants from all liabilities, rights of contribution, and rights of indemnification, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or in part on any act, omission, transaction, or other occurrence taking place on, or prior to, the Effective Date in any way relating to the Debtor, its  Estate and business affairs, the Chapter 11 Case and the Plan; and

> (c)    shall be permanently, irrevocably and unconditionally enjoined and barred from asserting or taking any of the following actions (all of which shall be permanently, irrevocably and unconditionally waived, released and discharged) against Debtor or any of its property on account of any liability, claim or interest in any way relating to the Debtor, and its Estate, the Chapter 11 Case and the Plan:

>> i.    commencing or continuing, in any manner or in any place, any suit, cause of action or other proceeding;
>> ii.    enforcing attaching, collection or recovering in any manner any judgment, award, decree or order;
>> iii.    creating, perfecting or enforcing any Lien or other encumbrance; and
>> iv.    commencing or continuing, in any manner or in any place, any suit, action or proceeding that does not comply with or is inconsistent with the provisions of the Plan.

13.3.   Exculpation and Limitation of Liability.   None of the Debtor, the Professional Persons retained by the Debtor and the Professional Persons employed by the Debtor, any of the Debtor's affiliates nor any of its managers, officers, directors, partners, associates, employees, shareholders or agents (collectively, the "Exculpated Persons"), shall have or incur any liability to any person for any act taken or omission made in good faith in connection with or related to the bankruptcy case or actions taken therein, including negotiating, formulating, implementing, confirming or consummating the Plan, the Disclosure Statement, or any contract, instrument, or other agreement or document created in connection with the Plan.   The Exculpated Persons shall have no liability to any Creditors or Equity Holders for actions taken under the Plan, in connection therewith or with respect thereto in good faith, including, without limitation, failure to obtain Confirmation of the Plan or to satisfy any condition or conditions, or refusal to waive any condition or conditions, precedent to Confirmation or to the occurrence of the Effective Date.   Further, the Exculpated Persons will not have or incur any liability to any holder of a Claim, holder of an Interest, or party-in-interest herein or any other Person for any act or omission in connection with or arising out of its administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as finally determined by the Bankruptcy Court, and in all respects such person will be entitled to rely upon the advice of counsel with respect to its duties and responsibilities under the Plan.

13.4.   Approval of Releases. To the extent necessary, the Plan constitutes the Debtor's motion pursuant to Bankruptcy Rule 9019 seeking approval of all releases and injunctions granted in the Plan.

## ARTICLE 14.0

## CONSUMMATION OF THE PLAN

14.1.   Retention of Jurisdiction.   Pursuant to Sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and the Plan, for the purposes of sections 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(a)   to hear and to determine any and all objections to or applications concerning the allowance of Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense, Claim, or Equity Interest;

(b)   to hear and determine any and all applications for payment of fees and expenses from the Debtor's estate made by attorneys or any other Professional pursuant to sections 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed from the Debtor's Estate under the Bankruptcy Code, and any and all objections thereto;

(c)     to hear and determine pending applications for the rejection, assumption, or assumption and assignment of unexpired leases and executory contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect of the assumption or rejection of any executory contract or lease;

(d)     to hear and determine any and all adversary proceedings, applications, or contested matters, including any remands from any appeals;

(e)     to hear and to determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan, or, prior to the Effective Date, any agreements or settlements approved under the Plan and any agreements to be executed and delivered under the Plan;

(f)     to liquidate any disputed, contingent, or unliquidated Claims;

(g)     to hear and determine all disputes between Creditors regarding the extent, validity or priority of Liens;

(h)     to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(i)     to enter and to implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(j)     to consider any modification of the Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or to reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(k)     to enter and to implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or to enforce the terms and conditions of the Plan and the transactions contemplated thereunder;

(l)     to hear and to determine any other matter not inconsistent with the Bankruptcy Code and Title 28 of the United States Code that may arise in connection with or related to the Plan, including any suits or actions against any third parties which are specifically reserved and assigned to the Reorganized Debtor; and

(m)     to enter a final decree closing the Chapter 11 Case.

(n)     to hear any and all disputes that may arise under any Bankruptcy Rule 9019 settlement, approved pursuant to the Confirmation Order.

14.2.   Abstention and Other Courts.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to the Chapter 11 Cases, this section of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

14.3.   Nonmaterial Modifications.   The Debtor may, with the approval of the Bankruptcy Court and without notice to all holders of Claims and Equity Interests, correct any nonmaterial defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable.   The Debtor may undertake such nonmaterial modification pursuant to this section insofar as it does not adversely change the treatment of the Claim of any Creditor or the interest of any Equity Interest holder who has not accepted in writing the modification.

14.4.   Material Modifications.  Modifications of this Plan may be proposed in writing by the Debtor at any time before confirmation, provided that this Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be modified at any time after confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modification.

# ARTICLE 15.0

## MISCELLANEOUS PROVISIONS

15.1.   Severability.  Should the Bankruptcy Court determine that any provision of the Plan is unenforceable either on its face or as applied to any Claim or Equity Interest or transaction, the Proponents may modify the Plan in accordance with section 14.3 or 14.4 of the Plan, as applicable, so that such provision shall not be applicable to the holder of any Claim or Equity Interest.

15.2.   Setoffs.  The Reorganized Debtor or the Debtor may, but shall not be required to, set off against any Claim and the payments or other distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever the Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor or the Debtor of any such claim that the Debtor may have against such holder.

15.3.   Binding Effect.  The Plan shall be binding upon, and shall inure to the benefit of,

the Debtor, the Reorganized Debtor the holders of the Claims, the holders of Equity Interests, and its respective successors and assigns.

15.4.    <u>Governing Law</u>.    Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

15.5.    <u>Payment of Statutory Fees</u>.    All fees payable pursuant to section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.

15.6.    <u>Timing of Distributions</u>.    Any payment or distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

15.7.    <u>Filing of Additional Documents</u>.    The Debtor shall file, as Plan Documents, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.8.    <u>Certifications</u>.    The failure to make any certification required to be made pursuant to the Plan on a timely basis shall result in the Reorganized Debtor withholding, without interest, any distribution to which the Person required to make such certification would otherwise be entitled.    Such withheld distribution shall be made only upon such Person's compliance with the certification requirements of the Plan.

Dated: June 3, 2016.

By:  <u> /s/   William D. Neville, President</u>
William D. Neville, President.

**Of Counsel:**

**Cooper & Scully, PC.**
By:  <u> /s/  Julie M. Koenig</u>
Julie M. Koenig
SBA# 14217300
Fed Id# 10396
815 Walker, Suite 1040
Houston, Texas 77002
713/236-6800 (Telephone)
713/236-6880 (Telecopier)
Julie.Koenig@cooperscully.com

Attorneys for the Debtor